---

(19 App. Div. 411.)

## In re SLOANE'S ESTATE.

(Supreme Court, Appellate Division, First Department. July 2, 1897.)

1. TRANSFER TAX—LEGACY IN REMAINDER.
   The value of a legacy in remainder, bequeathed subject to the use of the income of the fund by testator's widow during her life or widowhood, is to be ascertained, for the purposes of assessment, under the collateral inheritance tax act, upon the termination of the widow's estate by remarriage, by deducting from the principal of the legacy then payable the value of the particular estate of the widow therein during the term the widowhood actually existed.

2. SAME.
   Act May 27, 1896 (section 230), amending the collateral inheritance tax act, and providing that, "whenever an estate for life or years can be divested by the act or omission of the legatee or devisee, it shall be taxed as if there was no possibility of such limitation," does not furnish a rule for fixing the value of the estate in remainder upon such estate for life or years, but only for fixing the value of the life estate itself.

Appeal from surrogate's court, New York county.

Appeals by both the comptroller and the legatee, Yale College, from an order of the surrogate in the matter of the appraisal of the property of Thomas C. Sloane, deceased, under the transfer act. Order affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Emmet R. Olcott, for appellant comptroller
Geo. C. Holt, for appellant Yale College.

INGRAHAM, J. This appeal presents the question as to what was the fair value of the bequest to Yale College contained in the will of Thomas C. Sloane, deceased. Both the comptroller and the legatee appeal from the order of the surrogate, and we have to determine upon what principle the assessment is to be made. Thomas C.

Sloane died on the 17th day of June, 1890, a resident of the city of New York. By his will he gave to his executors the sum of $400,000, in trust to keep the same invested, and to apply the net income thereof to the use of his wife during her life, or until her remarriage; and upon her death or her remarriage $200,000 of this sum of $400,000 was given to the President and Fellows of Yale College at New Haven, a corporation existing under the laws of the state of Connecticut. The wife of the testator was at the time of his death 37 years old. She received the income of this sum until her remarriage, on the 16th day of April, 1896, at which time, under the provisions of the will, the trust ceased. Subsequent to the death of the testator, upon an application made to assess the value of his estate for taxation under the collateral inheritance tax act, an order was entered whereby it was "adjudged that the tax on the remainder value of the principal sum of four hundred thousand dollars, of which two hundred thousand dollars is bequeathed to the President and Fellows of Yale College, * * * is not now determinable." Subsequent to the remarriage of the testator's wife, an application was made to the surrogate to have the value of the estate which was subject to taxation assessed. The appraiser assessed the estate as subject to taxation at the whole amount payable to the legatees. Upon an appeal to the surrogate that assessment was set aside, and the matter was remitted to the appraiser to make a new report, and "to compute the value of the estate in remainder of the President and Fellows of Yale College by deducting from the principal fund of the said sum of $196,600 the value of the particular estate of the widow of Thomas C. Sloane for the term during which the widowhood actually existed, to wit, a period of five years and ten months." On the 16th day of April, 1896, the day upon which the trust estate terminated by the remarriage of the testator's widow, the legacy theretofore vested in Yale College became payable. The appraiser, however, was not to fix the value of the property at the time of the termination of the life estate, because what was taxed was not the property that passed to the legatee, but the right of succession to the property which vested in it upon the death of the testator.

It is settled now that what is taxed under the provisions of this statute is not the property that passes by the will, but the right of succession vesting in the legatee. So, upon the termination of this trust estate, what had to be determined by the appraiser was what was the value of the right of succession which, upon the death of the testator in June, 1890, vested in it under the will. Upon the death of the testator it was determined that it was impossible at that time to ascertain such value, because the trust estate was not limited upon the life of the testator's widow, but was to determine upon her death, or upon her remarriage. There was no method by which it could be determined when, if at all, the widow would remarry. There was, therefore, no method by which the value of interest of both of them at that time could be ascertained. The very object of the postponement of this appraisement was to enable the value of the legacy to Yale College to be fixed with some degree of certainty. That value could only be determined after the period of time which would elapse

between the death of the testator and the death or remarriage of the widow was ascertained definitely. Had the trust estate been determined upon the death of the widow, its duration could have been ascertained by accepting the average period of human life for a person of her age as the period during which the trust estate would continue; and, while this might not be accurate in a particular case, the average has been so clearly ascertained that in the long run no injustice is done. There is manifestly no such average that can be predicated upon the period which is to determine by the remarriage of a widow, and there was no rule, under the laws that then existed, by which the duration of the trust could be determined. The valuation of the bequest to Yale College having been postponed until the subsequent events could enable the surrogate accurately to determine the value of the bequest, and by the remarriage of the testator's widow, on April 16, 1896, the exact duration of the trust having been determined, it is now possible by a very simple method of computation to ascertain the exact value of the legacy which, upon the death of the testator, vested in Yale College, and this the surrogate did when he directed the appraisement upon such property in the order appealed from. We think the surrogate was right.

Our attention has been called to the amendment of section 230 of the tax law, which became a law on May 27, 1896. To this section, as it existed prior to that time, there was added a provision, which is as follows: "Whenever an estate for life or for years can be divested by the act or omission of the legatee or devisee, it shall be taxed as if there was no possibility of such limitation." We do not think that this provision of the law has such a retroactive effect as to control a case where the value of the tax has been fixed prior to its passage. The trust estate here had ended prior to the time when this provision became incorporated in the law. The life estate having thus come to an end, all that was necessary to determine the value of what had vested in Yale College at the death of the testator was to ascertain the present value of a sum of money payable in 5 years and 10 months, and this the surrogate has directed shall be done by the order appealed from. It should also be noted that this provision of the act of 1896 only provides for fixing the value of the life estate. Where for any reason the life estate is not taxable, it does not attempt to affect the appraisement of the remainder. We do not think, therefore, that this statute applies.

The order of the surrogate was right, and it is affirmed, with costs. All concur.